SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | | |
|---|---|---|
| AMAZON.COM, INC., | ) | |
| Plaintiff, | ) | No. |
| v. | ) | COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF |
| PHILIP MOYER, | ) | |
| Defendant. | ) | |

Amazon.com, Inc. ("Amazon") files this Complaint against Defendant Philip Moyer ("Moyer" or "Defendant"), alleging as follows:

## I. SUMMARY

1. This is a noncompete case. Since March 2017, Moyer was sales executive for Amazon Web Services ("AWS"), Amazon's cloud computing business, charged with developing sales strategies. In May 2019, Moyer resigned from AWS to become a sales executive for Google Cloud Platform ("GCP"), Google's rival cloud computing business, where he will be charged with developing its sales strategies.

2. By accepting that role, Moyer violated his contractual noncompete obligations to Amazon, and put himself in a position where he will necessarily use AWS cloud's confidential information, strategy, and roadmap on behalf of Google. Google has refused Amazon's request that it place Moyer in a position where he cannot use AWS confidential and proprietary information on behalf of Google. As a result, Amazon has been forced to request

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 1

this Court's assistance in obtaining Moyer's compliance with his contractual obligations and any damages it has suffered as a result of his violation.

## II. PARTIES

3. Amazon is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Seattle, Washington.

4. Moyer is a former Amazon employee and was at all times relevant to this complaint a resident of Berwyn, Pennsylvania. On information and belief, Moyer currently resides in Berwyn, Pennsylvania.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over Moyer and the subject matter of this action because Moyer entered into the Confidentiality, Noncompetition and Invention Assignment Agreement ("Noncompetition Agreement") with Amazon in Washington and Moyer expressly consented to the exclusive jurisdiction of courts located in King County, Washington in the Noncompetition Agreement.

6. Venue properly lies in King County because a substantial part of the events giving rise to this claim occurred in King County and the express terms of Moyer's Noncompetition Agreement with Amazon provide that venue for any action brought to enforce that agreement shall be in King County, Washington.

## IV. FACTS

7. Amazon hired Moyer in March 2017.

8. On March 5, 2017, as a condition of his employment with Amazon, Moyer agreed to and executed a Noncompetition Agreement with Amazon, without alteration.

9. Moyer's employment with Amazon began on March 13, 2017, as a sales executive for AWS, responsible for cloud sales, particularly in the area of the financial services industry.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

10. In the Noncompetition Agreement, Moyer promised to abide by limited noncompetition and non-disclosure restrictions. These restrictions protect Amazon's trade secrets and its highly confidential information, as well as Amazon's current and prospective customer relationships, its existing and prospective business relationships, and its confidential plans, pricing, developments, and strategies. A true and correct copy of Moyer's Noncompetition Agreement is attached hereto as **Exhibit A**. The Noncompetition Agreement provides in part that:

    a) To do his job, Moyer will be given access to valuable confidential information concerning Amazon's business. ¶ 3.1;

    b) Moyer will not use or disclose Amazon's confidential information after his employment. ¶ 3.1;

    c) For 18 months after leaving Amazon, Moyer will not "directly or indirectly" "engage in or support the development, manufacture, marketing, or sale of any product or service that competes or is intended to compete with any product or service sold, offered, or otherwise provided by Amazon (or intended to be sold, offered, or otherwise provided by Amazon in the future) that Employee worked on or supported, or about which Employee obtained or received Confidential Information." ¶ 4.1;

    d) Moyer acknowledges that the noncompetition covenant may "significantly limit Employee's future flexibility in many ways," and will "bar Employee, for 18 months after the Separation Date, from accepting certain competitive opportunities." Moyer further acknowledged "the geographic areas applicable to certain restrictions" are "extremely broad and in many cases worldwide." Moyer agreed that the restrictions "are reasonable in scope, area, and duration, and will not result in any undue hardship for Employee." ¶ 4(a); and

    e) Injunctive relief is appropriate to enforce the agreement and prevent irreparable harm. ¶ 7.4.

11. Cloud computing is the on-demand delivery of computing power, software, storage, and other information technology services and products via the internet. Cloud computing allows customers access to shared, flexible computing resources on an on-demand basis. A cloud computing provider owns and maintains the network-connected hardware required for these offerings so that customers can use what they need via the internet.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Customers essentially "rent" the specific computing resources they need, when they need them, either in place of or in conjunction with their own existing computing infrastructure.

12. AWS provides cloud computing services and products globally. AWS cloud offerings include computing power, data storage, databases, analytics, developer and management tools, machine learning services, and security services (among other things). Customers pay to use AWS cloud offerings to, among other things: access computing services; easily and inexpensively store digital information; develop, access, and run software; and set up and search databases.

13. Google Cloud Platform ("GCP") is Google's cloud computing company. GCP provides services that are directly competitive with AWS.

14. AWS cloud customers in the financial services industry include large global banks, financial markets, and businesses that build and sells software as a service and are utilized by the financial services industry. Financial services customers are sophisticated and demanding due to the nature of their industry and the high level of regulation imposed on their businesses.

15. Both the financial services and healthcare industries are highly regulated industries that share security, regulatory, compliance, and privacy concerns. Because of the high level of regulation, companies in the financial services and healthcare industries share many inhibitors to cloud adoption and the same needs for privacy, security, and the ability to react quickly to a customer's needs to ensure resiliency and stability such that the customer meets all regulatory requirements for handling customer confidential information.

16. AWS sales executives, including Moyer, are responsible for understanding multiple aspects of AWS cloud, including (1) AWS's existing and projected cloud offerings; (2) the value and efficiency those offerings deliver to customers; (3) the limitations and any drawbacks of those offerings; (4) what AWS offerings are forthcoming to address customer needs; (5) how to obtain necessary features and functionalities; (6) the service, pricing, volume,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

and capacity terms on which AWS contracts with and provides offerings to its customers; and (7) how AWS positions itself against other cloud computing providers to best satisfy customer needs, among other things.

17. As a Director in cloud sales, Mr. Moyer and his team shared those responsibilities. In addition, Mr. Moyer lead his team in setting the strategic priorities, best practices, and sales strategies across the US financial services industry and the independent software vendors ("ISVs") serving those accounts. At the time of his departure, Moyer had 13 direct reports and supervised 100 employees.

18. On a day to day basis, Mr. Moyer analyzed customers' needs against AWS's cloud offerings and worked to address any and all obstacles to cloud adoption. It was Mr. Moyer's job to understand what features customers wanted or needed beyond AWS's current or future cloud offerings. Mr. Moyer authored, revised, and reviewed a vast array of confidential information pertaining to AWS cloud, including participating in Amazon's highly confidential operational planning process for its worldwide commercial sales and participating in weekly reviews of AWS's top customers. Moyer was also a key member of multiple highly confidential AWS cloud sales initiatives that are applicable across industries, including some that will not be released until well into 2020.

19. Moyer not only knows highly confidential and proprietary information concerning Amazon's cloud sales plans but also the AWS cloud offerings (and future offerings) underlying them.

20. In short, Moyer knows—and participated in formulating much of—the roadmap and competitive strategies for AWS cloud through the end of 2020, and he was instrumental in selling that vision to some of Amazon's most important prospects and customers.

21. Amazon's confidential information and trade secrets are the results of significant and long-term investments of money and resources, and Amazon takes extensive steps to keep them confidential.

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

22. On May 22, 2019, Moyer advised Amazon that he intended to leave Amazon to join Google.

23. After learning of Moyer's plan to join Google, Amazon contacted Google to discuss Moyer's proposed position at Google, and any steps Google planned to take to ensure Moyer would not be acting in a role that would allow Google to use Amazon confidential information to compete unfairly against Amazon.

24. Google refused to hold Moyer out of Google cloud for the term of his Noncompetition Agreement. Instead, Google confirmed it intends for Moyer to start work in Google cloud sales, focusing on selling Google cloud to healthcare customers—a highly regulated industry like financial services.

25. Moyer cannot be successful in selling Google cloud without developing methods to compete with Amazon cloud.

26. Moyer's role in Google cloud will necessarily involve strategy regarding sales of and improvements for Google's current or future cloud offerings, and will therefore threaten the disclosure of Amazon's highly confidential information and breach the Noncompetition Agreement.

27. Moyer's violations of his Noncompetition Agreement will cause irreparable harm to Amazon, including allowing Google to better compete with Amazon currently and in the future with the benefit of Amazon's confidential information.

28. Amazon asks this Court to enforce the terms of the Noncompetition Agreement and to restrain Moyer from working in Google cloud for 18 months from the date of his departure.

## V. CLAIM

### Breach of Noncompetition Agreement

29. Amazon incorporates herein all allegations in the preceding paragraphs of this Complaint.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

30. As a condition of his employment, Moyer entered into a valid and binding Noncompetition Agreement with Amazon in which he promised that he would not, for a period of 18 months following the termination of his employment with Amazon, engage in or support any product or service that competes with, or is intended to compete with, any Amazon products and services about which Moyer obtained or received confidential information.

31. Moyer received sufficient consideration to support the Noncompetition Agreement.

32. Moyer is expected to start substantive work for Google imminently and will assist Google cloud in direct competition with Amazon.

33. Moyer's breach of the Noncompetition Agreement will cause irreparable harm to Amazon and should therefore be enjoined as expressly authorized by the terms of the Noncompetition Agreement.

34. In the alternative, if Moyer is allowed to breach the Noncompetition Agreement, Amazon will suffer economic damages in an amount to be proven at trial.

## VI. PRAYER FOR RELIEF

Amazon respectfully prays for the following relief:

A. Entry of a temporary restraining order and preliminary injunction, followed by a permanent injunction that:

(i) Enjoins Moyer from all actions in violation of, or that would interfere with Amazon's rights under, the Noncompetition Agreement, including but not limited to enjoining Moyer from engaging in any activities that directly or indirectly support any aspect of Google cloud for the duration of his Noncompetition Agreement;

(ii) Prohibits Moyer from disclosing, misusing, or misappropriating for his use or the use of others any confidential or proprietary information or trade secrets of Amazon or its subsidiaries;

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(iii) Requires Moyer to return to Amazon's counsel all property, documents, files, reports, work product, and/or other materials, if any, that Moyer has in his possession, custody, or control that were obtained from Amazon or that constitute work product owned by Amazon or any of its subsidiaries;

(iv) Prohibits Moyer, for a period of 18 months after May 22, 2019, from engaging in any activities that directly or indirectly support any aspect of Google cloud, and that such period be extended or equitably tolled to the extent warranted by the fact of the case;

(v) Prohibits Moyer, for a period of 18 months after May 22, 2019, from directly or indirectly accepting or soliciting business from any current or prospective customer of AWS cloud as of the date of his termination, and that such period be extended or equitably tolled to the extent warranted by the fact of the case; and

(vi) Prohibits Moyer for a period of 12 months after May 22, 2019, from directly or indirectly soliciting or hiring persons who are employed by Amazon, and that such period be extended or equitably tolled to the extent warranted by the fact of the case;

B. For judgment against Moyer for damages, including damages for his unjust enrichment, in an amount to be proven at trial; and

C. Such further relief as the Court deems just and equitable.

DATED this 23rd day of July, 2019.

    Davis Wright Tremaine LLP
    Attorneys for Plaintiff Amazon.com, Inc.

By *s/ Brad Fisher*
    Brad Fisher, WSBA #19895
By *s/ Zana Bugaighis*
    Zana Bugaighis, WSBA #43614
By *s/ Jordan Clark*
    Jordan Clark, WSBA # 49659
    920 Fifth Ave, Suite 3200
    Seattle, WA 98104-1610
    Telephone: 206-622-3150
    Facsimile: 206-757-7700
    E-mail: bradfisher@dwt.com
    E-mail: zanabugaighis@dwt.com
    E-mail: jordanclark@dwt.com

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

DocuSign Envelope ID: CD0A74E8-10B3-4330-AC4D-80EAB0E21CE8

**AMAZON.COM, INC.**

**CONFIDENTIALITY, NONCOMPETITION, AND INVENTION ASSIGNMENT AGREEMENT**

This Confidentiality, Noncompetition, and Invention Assignment Agreement ("**Agreement**") is made by and between Amazon.com, Inc., a Delaware corporation, and _____Philip Moyer_____ ("**Employee**").

**RECITALS**

A.  Employee enters into this Agreement in connection with Employee's acceptance of employment with Amazon.com, Inc. or its subsidiary or affiliate, and any future employment with Amazon.com, Inc. or another of its subsidiaries or affiliates (depending on the circumstances, each an "**Employer**");

B.  As used in this Agreement, "**Amazon**" means Amazon.com, Inc. and any entity that controls, is controlled by, or is under common control with Amazon.com, Inc., including without limitation its subsidiaries and affiliates;

C.  Employee's acceptance of this Agreement is an express condition of Employee's employment with Employer, and is made by Employee in consideration of such employment, including the compensation, benefits and confidential information provided now and in the future to Employee by Employer, which Employee acknowledges are of significant benefit to Employee; and

D.  Employee's continued employment with Employer is expressly conditioned on Employee's good faith agreement to comply with this Agreement.

**AGREEMENTS**

In consideration of the above Recitals, which are incorporated herein, the promises and covenants below, and other valuable consideration, the receipt and adequacy of which is acknowledged, the parties agree as follows:

1.  **TERM.** This Agreement, including Sections 3, 4, and 5, contains obligations that apply during Employee's employment and for specified periods after the date Employee's employment ends ("**Separation Date**"), regardless of the reason for separation or whether it was voluntary or involuntary.

2.  **ATTENTION AND EFFORT.** During employment, Employee will devote Employee's entire productive time, ability, attention, and effort to furthering Amazon's best interests and will not (without Amazon's prior written consent) carry on any separate professional or other gainful employment, including self-employment and contract work.

3.  **CONFIDENTIAL INFORMATION.**

    **3.1 Confidentiality and Confidential Information.** Employee will obtain, receive, or gain access to Confidential Information (as defined below) in connection with Employee's work for Amazon. During employment and at all times thereafter, Employee will hold all Confidential Information in strictest confidence and will not acquire, use, publish, disclose, or communicate any Confidential Information except as required in connection with Employee's work without the prior written approval of an authorized officer of Amazon. For purposes of this Agreement, "**Confidential Information**" means proprietary or confidential information of Amazon in whatever form, tangible or intangible, whether or not marked or otherwise designated as confidential, that is not otherwise generally known to the public, relating or pertaining to Amazon's business, projects, products, customers, suppliers, inventions, or trade secrets, including but not limited to: business and financial information; Amazon techniques, technology, practices, operations, and methods of conducting business; information technology systems and operations; algorithms, software, and other computer code; published and unpublished know-how, whether patented or unpatented; information concerning the identities of Amazon's business partners and clients or potential business partners and clients, including names, addresses, and contact information; customer information, including prices paid, buying history and habits, needs, and

DocuSign Envelope ID: CD0A74E8-10B3-4330-AC4D-80EAB0E21CE8

the methods of fulfilling those needs; supplier names, addresses, and pricing; and Amazon pricing policies, marketing strategies, research projects or developments, products, legal affairs, and future plans relating to any aspect of Amazon's present or anticipated businesses. "Confidential Information" does not include the terms and conditions of Employee's own employment.

**3.2 Prevention of Unauthorized Release of Confidential Information.** Employee will take reasonable measures to prevent unauthorized persons or entities from obtaining, receiving, or gaining access to any Confidential Information in Employee's possession or control.

**3.3 Confidential Information of Third Parties.** Employee will preserve as confidential any information that Employee learns or obtains from a third party or relating to a third party (such as a client, customer, affiliate, partner, or vendor) that is not readily available to the public or that Amazon is obligated to treat as confidential, and Employee will treat such information as Confidential Information.

**3.4 Return of Confidential Documents.** On the Separation Date, or at any time otherwise requested by Amazon, Employee will immediately return all Confidential Information and other things belonging to Amazon, including tools, equipment, devices, or other property, and all documents, records, notebooks, and tangible articles containing or embodying any Confidential Information, including any copies (whether stored in paper, electronic, magnetic, or other form) then in Employee's possession or control, whether prepared by Employee or others.

4. **RESTRICTIVE COVENANTS.**

    **4.1 Non-Competition.** During employment and for 18 months after the Separation Date, Employee will not, directly or indirectly, whether on Employee's own behalf or on behalf of any other entity (for example, as an employee, agent, partner, or consultant), engage in or support the development, manufacture, marketing, or sale of any product or service that competes or is intended to compete with any product or service sold, offered, or otherwise provided by Amazon (or intended to be sold, offered, or otherwise provided by Amazon in the future) that Employee worked on or supported, or about which Employee obtained or received Confidential Information.

    **4.2 Non-Solicitation.** During employment and for 18 months after the Separation Date, Employee will not, directly or indirectly, whether on Employee's own behalf or on behalf of any other entity (for example, as an employee, agent, partner, or consultant): (a) accept or solicit business from any Customer of any product or service that Employee worked on or supported, or about which Employee obtained or received Confidential Information; or (b) encourage any Customer or Business Partner to cease doing business with Amazon or to terminate or limit an existing relationship or arrangement with Amazon. For purposes of this Agreement, "**Customer**" means any individual or entity that was a customer or client of Amazon during Employee's employment, or with which Amazon engaged in discussions before the Separation Date related to the possibility that such party might become a customer or client of Amazon, and "**Business Partner**" means any individual or entity with which, before the Separation Date, Amazon was involved in any business arrangement or engaged in discussions regarding the possibility of entering into such an arrangement.

    **4.3 Non-Interference.** During employment and for 12 months after the Separation Date, Employee will not, directly or indirectly, whether on Employee's own behalf or on behalf of any other entity (for example, as an employee, agent, partner, or consultant): (a) solicit or otherwise encourage any employee, contractor, or consultant of Amazon ("**Amazon Personnel**") to terminate any employment or contractual relationship with Amazon; (b) disclose information to any other individual or entity about Amazon Personnel that could be used to solicit or otherwise encourage Amazon Personnel to form new business relationships with that or another individual or entity; or (c) otherwise interfere with the performance by current or former Amazon Personnel of their obligations or responsibilities to Amazon. Nothing in this Section 4.3 restricts Employee from exercising rights protected under the National Labor Relations Act.

    **4.4 Reasonableness of Restrictions.** Employee recognizes that the restrictions in this Section 4 may significantly limit Employee's future flexibility in many ways. For example, the restriction in Section 4.1

DocuSign Envelope ID: CD0A74E8-10B3-4330-AC4D-80EAB0E21CE8

will bar Employee, for 18 months after the Separation Date, from accepting certain competitive opportunities. Employee further recognizes that the geographic areas for many of Amazon's products and services – and, by extension, the geographic areas applicable to certain restrictions in this Section 4 – are extremely broad and in many cases worldwide. Employee agrees and acknowledges that the restrictions in this Section 4 are reasonable in scope, area, and duration, and will not result in any undue hardship for Employee.

5. **INTELLECTUAL PROPERTY.**

    5.1 **Copyrights.** All copyrightable works prepared by Employee within the scope of employment are works made for hire. Employer will own all rights under copyright in and to such works, and Employer will be considered the author of such works. If and to the extent that any such works are deemed not to constitute a work made for hire, and with respect to any other works that Employee prepares during working hours or using Amazon resources, Employee hereby irrevocably assigns to Employer all right, title, and interest in and to such work. To the extent any of Employee's rights in such works, including any moral rights, are not capable of assignment under applicable law, Employee hereby irrevocably and unconditionally waives all enforcement of those rights to the maximum extent permitted under applicable law.

    5.2 **Inventions.** Employee will make prompt and full written disclosure to Employer, and hereby irrevocably assigns exclusively to Employer, all of Employee's rights, title, and interest in and to any and all inventions, discoveries, designs, developments, concepts, techniques, procedures, algorithms, products, improvements, business plans, and trade secrets (collectively, "**Inventions**") that Employee solely or jointly may conceive, develop, reduce to practice, or otherwise produce during Employee's employment.

    5.3 **NOTICE Regarding Inventions.** Any provision in this Agreement requiring Employee to assign rights in Inventions does not and will not apply to any Invention for which no equipment, supplies, facilities, or trade secret information of Employer was used and that was developed entirely on Employee's own time, unless (a) the Invention relates (i) directly to the business of Employer, or (ii) to Employer's actual or demonstrably anticipated research or development, or (b) the Invention results from any work performed by Employee for Employer. This **NOTICE Regarding Inventions** will be interpreted in a manner that complies with applicable state law.

    5.4 **Prior Inventions.** As to any Invention in which Employee has an interest at any time, if Employee uses or incorporates such an Invention in any released or unreleased Amazon product, service, program, process, development, or work in progress, or if Employee permits Amazon so to use or incorporate such an Invention, or if such an Invention pertains to Amazon business, Employee irrevocably grants (to the extent Employee has authority to do so) a perpetual, royalty-free, fully paid up, worldwide license to exercise any and all rights with respect to such Invention, including without limitation the right to protect, make, have made, import, use, and sell that Invention without restriction and the right to sublicense those rights to others (with the right to grant further sublicenses). This license will be exclusive, subject only to any preexisting non-exclusive licenses or other pre-existing rights not subject to Employee's control.

    5.5 **Assistance.** Employee will execute all documents and take all other actions reasonably requested by Amazon in order to carry out and confirm the assignments contemplated by this Agreement, including without limitation applications for patents, registered designs, certificates of authorship, and other instruments or intellectual property protections appropriate to protect and enforce intellectual property rights throughout the world. If Employee fails to execute, acknowledge, verify, or deliver any such document reasonably requested by Amazon, Employee irrevocably appoints Amazon and its authorized officers and agents as Employee's agent and attorney-in-fact to act in Employee's place to execute, acknowledge, verify, and deliver any such document on Employee's behalf. Employee's obligations under this Section 5.5 apply during employment and at all times thereafter.

6. **DISCLOSURE OF RESTRICTIONS.** Employee will disclose and provide a true and correct copy of this Agreement to any prospective new employer, business partner, or investor BEFORE accepting employment

or engaging in any business venture. Employee authorizes Amazon to provide a copy of this Agreement to any new or prospective employer, business partner, or investor of Employee.

7. **GENERAL PROVISIONS.**

   **7.1 Third Party Beneficiaries.** All Amazon entities, including without limitation Employer, are intended third party beneficiaries of Employee's covenants and promises in this Agreement, and have enforceable rights and remedies under this Agreement.

   **7.2 Waiver.** No waiver of any right or obligation under this Agreement will be valid unless in writing and signed by an authorized officer of Amazon. No waiver by Amazon of any breach of this Agreement will be a waiver of any preceding or succeeding breach. No waiver by Amazon of any right or obligation under this Agreement will be construed as a waiver of any other right or obligation. Amazon will not be required to give prior notice to enforce strict adherence to all terms of this Agreement.

   **7.3 Governing Law and Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the State of Washington, excluding its choice of law provisions. Each party irrevocably consents to exclusive jurisdiction and venue in the state and federal courts located in King County, Washington with respect to any action, claim, or proceeding arising out of or in connection with this Agreement, with the exception of requests for temporary or preliminary injunctive relief, which may be sought in any appropriate court with jurisdiction, but only if such relief could not be issued and made immediately binding against the party sought to be enjoined by the state and federal courts located in King County, Washington.

   **7.4 Remedies.** Any breach of this Agreement may cause Amazon irreparable harm for which there is no adequate remedy at law. As a result, Amazon will be entitled to the issuance by a court of competent jurisdiction of an injunction, restraining order, or other equitable relief in favor of itself, without the necessity of posting a bond, restraining Employee from committing or continuing to commit any such violation. Any right to obtain an injunction, restraining order, or other equitable relief under this Agreement will not be considered a waiver of any right to assert any other remedy Amazon may have at law or in equity. Nothing in this Agreement will limit the remedies available to Amazon. The restrictions in this Agreement are independent of any other provision of this Agreement and will be enforceable whether or not Employee may have or purport to have any claim against Amazon.

   **7.5 Modification of Restrictions; Severability.** Should a court of competent jurisdiction find that any provision of this Agreement, or compliance by any of the parties with any provision of this Agreement, is unlawful or unenforceable, such provision will be treated as narrowed to the extent required to make it lawful and enforceable. If such modification is not possible, the unlawful or unenforceable provision will be severed from the Agreement and the remaining provisions will remain in full force and effect to the maximum extent consistent with applicable law. If Employee breaches any post-employment obligations to Amazon set forth in Section 4 of this Agreement, the applicable duration of such obligation will be extended by a period of no less than the duration of the breaching conduct. This Agreement should be interpreted in a way that provides the maximum protection to Amazon's Confidential Information and other business interests, and should not be interpreted against any party as its drafter.

   **7.6 Survival of Covenants.** The covenants and promises contained in Sections 3 through 7 of this Agreement will survive after the Separation Date.

   **7.7 Assignment.** This Agreement will bind and inure to the benefit of Employee and Amazon, and their respective heirs, legal representatives, and permitted successors and assigns. The covenants and promises of Employee under this Agreement are unique and personal. Accordingly, Employee may not assign any of Employee's rights or duties under this Agreement. Amazon.com, Inc. may assign this Agreement, without notice to Employee. Employee consents to such assignment and agrees and acknowledges that all terms and conditions of this Agreement will remain in effect after any such assignment.

**7.8 Entire Agreement.** This Agreement contains the entire understanding between Employee and Amazon with respect to the subject matter of this Agreement, and there are no representations, warranties, promises, or undertakings other than those contained in this Agreement. No modification of or amendment to this Agreement (except by a court under Section 7.5) will be effective unless in writing and signed by both Employee and an authorized officer of Amazon.

**7.9 Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be treated as an original, but all of which taken together will be treated as one and the same instrument.

8. **EMPLOYEE REPRESENTATIONS REGARDING EXISTING OBLIGATIONS.** Employee represents and certifies as follows: (a) Employee is not in possession or control of any document or other tangible thing that in any way constitutes confidential, proprietary, or trade secret information of any third party (including any former employer); (b) Employee is not subject to a non-competition agreement that precludes Employee's work for Amazon; (c) Employee has identified all confidentiality, proprietary information, non-solicitation, or similar agreements or obligations Employee has with any third party, and Employee will not violate any such agreements or obligations in the course of Employee's work for Amazon; and (d) Employee will not use or disclose any tangible or intangible information that constitutes a trade secret of any third party (including any former employer) in the course of Employee's employment, except pursuant to written authorization to do so (e.g., a technology license between Amazon and the third party).

9. **EMPLOYEE HAS READ AND UNDERSTOOD THE TERMS OF THIS AGREEMENT; RIGHT TO SEPARATE COUNSEL.** Employee acknowledges with execution of this Agreement that: (a) Employee has carefully read all of this Agreement's terms and agrees they are necessary for the reasonable protection of the business of Employer and Amazon; (b) Employer has been induced to employ Employee by Employee's representation that Employee will abide by and be bound by each of the covenants and restraints in this Agreement; and (c) each and every covenant and restraint in this Agreement is reasonable. Employee acknowledges that Employee has been advised by Amazon that Employee is entitled to have this Agreement reviewed by counsel of Employee's choice, and has either done so or elected to forgo such right.

HAVING READ AND FULLY UNDERSTOOD THIS AGREEMENT, a copy of which has been provided to Employee, the parties execute this Agreement.

**AMAZON.COM, INC.**

Signature: *Beth Galetti*

Name: Beth Galetti

Title: Vice President, Human Resources

**EMPLOYEE**

Signature: *Philip Moyer* (DocuSigned by: E352DD52BB5243E...)

Name: Philip Moyer

Date: 3/5/2017