1

2                                                             The Honorable Ricardo S. Martinez

3

4

5

6

7                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                    AT SEATTLE

9   AMAZON.COM, INC.                          )
                                              )     No. 2:19-cv-01176-RSM
10                          Plaintiff,        )
                                              )     REPLY IN SUPPORT OF
11         v.                                 )     AMAZON'S MOTION FOR
                                              )     PRELIMINARY INJUNCTION
12  PHILIP MOYER,                             )
                                              )     NOTE ON MOTION
13                          Defendant.        )     CALENDAR:
                                              )     September 12, 2019 @ 10:00 a.m.[1]
14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [1] The hearing time was set by stipulated order in the event the Court allows oral argument on Amazon's motion.
    REPLY IN SUPPORT OF MOTION
    FOR PRELIMINARY INJUNCTION
    (2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## I.    INTRODUCTION

In the absence of injunctive relief, as the Vice President, Healthcare, Google Cloud, Phil Moyer **will** do the following:

- Armed with knowledge of AWS's ██████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████,[2]  Moyer **will** solicit AWS's largest healthcare clients and prospects and personally explain why he believes Google's offerings to this regulated industry are superior to AWS's, all in order to take business from AWS and increase his productivity-based bonus;

- As part of the Google Cloud executive team, Moyer **will** ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████; and

- Moyer **will** ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████.

None of this is speculative: ***it is the sworn testimony of Moyer's new boss, Rob Enslin, that Moyer was hired to do these very things***.  Bugaighis Decl., Ex. A (Enslin Dep.), 53, 66-67, 98-99, 139, 146-151.  Aside from a different job title, there are no limits whatsoever on Moyer's work for Google, Moyer intends to breach his agreement with Amazon, and Amazon **will** suffer harm to both its goodwill and its business if he is allowed to do so.  Under both Washington and federal case law, Amazon is entitled to an injunction enjoining Moyer from serving as the Vice President, Healthcare, Google Cloud for the term of his noncompete.

---

[2] A _014690-91, Banks Decl., Ex. A (2020 Industry & ISV OP1 reviewed by Moyer on April 23, 2019 and May 15, 2019; emphasis in original).

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 1
(2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.   THE FACTUAL RECORD IS NOT IN ANY MEANINGFUL DISPUTE

To ensure that there would be no argument that Amazon failed to "identify[] confidential . . . information with sufficient specificity" and relied on "hazy" evidence in a single unsealed declaration,[3] Amazon submitted 18 sworn declarations and more than 1,300 pages of supporting exhibits (which contain more than ███ references to ████████████ █████) demonstrating that Moyer was privy to the most sensitive and confidential information concerning AWS's entire cloud business, including both the "healthcare vertical" and AWS's ████████████████████████████. Other than disputing the specific date of a meeting, discounting (but not denying) his participation, and claiming he "does not remember" some of what he studied and debated, there is no genuine dispute as to the relevant facts:

- Moyer was hired by Google because of his work at AWS, with the expectation that he could take over financial services or a "regulated industries group."

- Moyer's role as a Google Cloud Vice President will be virtually identical to his role as an AWS Director, including ████████████████████████████████████ ███████████████████████████████████████████████ ████████████.

- Moyer reviewed and provided feedback regarding the most confidential documents regarding the entirety of AWS's commercial cloud strategy, including without limitation:

  - AWS's 2019 Commercial OP1 that provides the ████████████████ ████████████████████████,[4]

  - AWS's 2020 Industry & ISV OP1 regarding ████████████████ ██ █████████████,[5]

  - AWS's initiative analyzing ***how to speed up*** ████████████ ████████████████████████,[6]

---

[3] *Amazon.com, Inc. v. Powers*, 2012 WL 6726538, at *5-6 (W.D. Wash. Dec. 27, 2012).

[4] A_000032-82, Clayville Decl., Ex. A (AWS Worldwide Commercial Field Operations (WWCFO) 2019 OP1 Plan – 8/7/2018).

[5] A_014688-729, Banks Decl., Ex. A (2020 OP1 Industry & Strategic ISV – Stakeholder Reviews as of 4/24/2019).

[6] A_000098-133, Clayville Decl., Ex. D (2019 Global Startup OP1: June 6th, 2018)

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 2
(2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

- AWS's detailed *operational plan for global accounts*, including ████████ ███████████████. *AWS's plan to address* ████████████, and AWS's ███████.[7]

- AWS's Enterprise OP1, discussing ██████████████ ████████████████████████ and expand current prospective customers;[8]

- AWS's *plan to initiate* ████████████████████.[9]

- AWS's 2019 Global Partner OP1 summarizing the ████████ ████████████;[10]

- AWS's updated strategy, based on Moyer's initiative, ████████████;[11]

- AWS's *analysis of strategic accounts* including ████████. ████████;[12]

- AWS's *initiative for* ████████████;[13]

- Unreleased service team OP1s and PRFAQs, ████████ ████[14] and

- AWS's ████████████.[15]

---

[7] Clayville Decl., Ex. D (Global Accounts FAQ)
[8] A_000014-142, Clayville Decl., Ex. E (AWS Global Accounts 2019 OP1 – June 2018 and AWS 2019 Enterprise OP1).
[9] Clayville Decl., Ex. E (AWS 2019 Enterprise OP1).
[10] A_003526546, Clayville Decl., Ex. D (2019 AWS Global Commercial Partner OP1 – June 7, 2018)
[11] A_000519-528, Clayville Decl., Ex. D (████████████).
[12] A_000691-710, Clayville Decl. Ex. D (Input Metrics Strategic Accounts and OP2 Plan – Strategic Accounts - 2019).
[13] Clayville Decl., Ex. G (EC2 Business Development/GTM Monthly Metrics Overview – February 2019)
[14] A_00324-53, A_014730-83 Banks Decl., Ex. B (████████████████).
[15] Carlton Decl., Ex. A (████████████████████)

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 3
(2:19-cv-01176-RSM)

- Moyer participated in numerous AWS unreleased cross-vertical initiatives, including:

  - Drafting and providing input on AWS's strategy to ███████████ ██████████████████████████████[16]

  - Providing input on a strategy for unreleased ██████████ ████████████████████[17]

  - Prioritizing and advocating for ██████████████████████ ████████████████████████;[18]

  - Providing input regarding ███████████████████ ████████[19]

  - Providing input to ██████████████████████ ████;[20]

  - Developing ████████████████████████████ ████████████;[21]

These strategies will not become "stale" in 2020—and they are the ones that Moyer will now be tasked with undermining for the benefit of Google.  The majority of AWS's 2020 OP1 plans ████████████████████████████████████████████████████████ ████████.  Clayville Decl. ¶ 9.  Moyer knows all of this, and Amazon is entitled to an injunction that enforces Moyer's promise not to sell or develop competitive products.

---

[16] Clayville Decl. ¶¶ 8, 19, Exs. D (███████████████), H, K, & L.
[17] Clayville Decl. ¶¶ 16 & 19 Exs. H & L; Second Fallon Decl. ¶ 8.
[18] Gandarillas Decl. ¶¶ 4-9 & Ex. A; Second Gandarillas Decl. ¶¶ 3-8, Exs. A & B; Fallon Decl. ¶ 12; Second Fallon Decl. ¶¶ 7, 13.
[19] Carlton Decl. ¶¶ 5-8 & Ex. A; Second Carlton Decl. ¶¶ 3-4; Gandarillas Decl. ¶¶ 3-8; Second Gandarillas Decl. ¶¶ 4-8; Clayville Decl. ¶¶ 16-20; Second Clayville Decl. ¶¶ 6-7; Fallon Decl. ¶¶ 11, 20; Second Fallon Decl. ¶ 9 & Ex. B.
[20] Banks Decl. ¶¶ 11-17 & Ex. A-D; Second Banks Decl. ¶¶ 5-6; Neault Decl. ¶¶ 7-11; Second Neault Decl. ¶¶ 6-9; Gandarillas Decl. ¶ 6; Second Gandarillas Decl. ¶¶ 4-6 & Exs. A & B; Clayville Decl. ¶¶ 13 & Ex. G, 16-20; Second Clayville Decl. ¶ 6-7; Fallon Decl. ¶¶ 11, 20; Second Fallon Decl. ¶ 9 & Ex. B.
[21] Banks Decl. ¶¶ 11-17 & Ex. A-D; Second Banks Decl. ¶¶ 5-6; Neault Decl. ¶¶ 7-11; Second Neault Decl. ¶¶ 6-9; Gandarillas Decl. ¶ 6; Second Gandarillas Decl. ¶¶ 4-6 & Exs. A & B; Clayville Decl. ¶¶ 6-21 & Exs. A-I; Fallon Decl. ¶¶ 11, 20; Second Fallon Decl. ¶ 9 & Ex. B; Carlton Decl. ¶¶ 5-8 & Ex. A; Second Carlton Decl. ¶¶ 3-4.

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 4
(2:19-cv-01176-RSM)

### III.   AMAZON IS ENTITLED TO INJUNCTIVE RELIEF

**A.     Amazon Seeks an Injunction Enjoining Moyer from Acting as Google Cloud's Vice President, Healthcare, and It is Not Seeking an Advisory Opinion Concerning Other Jobs, at Google or Elsewhere**

In an effort to persuade the Court that Amazon is acting unreasonably (and to somehow make this case look more superficially like the *Powers* case), Moyer argues that "Amazon seeks to have Moyer completely sit out of the field in which he has worked for over twenty five years, potentially derailing his career." Opp. at 24.  This is not true, and this strawman argument is precisely the reason that Amazon sought—and received—written confirmation that the ***only*** position at issue in this litigation is the Vice President, Healthcare, Google Cloud position for which Moyer was hired.  Francis Decl., Ex. 11.  ***Amazon is requesting the relief in its proposed injunction***, not something summoned by counsel for rhetorical purposes.[22]

Amazon did not and does not take the position that Moyer cannot work in the "cloud computing field," or that he cannot work at Google.  Moyer himself seems to think that Amazon should have objected to the job he almost took with ██████ because it involved "cloud computing"—but Amazon did not.  Clayville Decl. ¶¶ 4-5; Fallon Decl. ¶ 5.  Google has said █ ████████████████████████████████████████████████████████ ████████████████████, an arrangement that Amazon has accepted with many former employees who are not openly trading on their knowledge of Amazon's business to its competitive disadvantage—like the defendants in *Szabadi, Farrell, Wiley,* and now *Moyer*.[23]

---

[22] Moyer argues that the fact that Amazon's Complaint—which was drafted months ago without the benefit of any discovery or any clarity as to what Moyer would be doing at Google—gives Amazon latitude to seek broader relief than what was ultimately requested in its motion somehow requires Amazon to litigate the restrictions that are appropriate for other unidentified positions. Google has ***never*** proposed any position to Amazon other than Vice President, Healthcare, nor has it ever proposed ***any*** limitations on this position, and Amazon's motion is, accordingly, directed to that job. Second Bugaighis Decl. ¶ 3; Jackson Decl. ¶ 5. Amazon reserves its rights to seek further relief should Moyer and Google seek to breach the noncompetition in some other way that will result in irreparable harm.

[23] Moyer and Google go to great lengths to argue that Amazon does not enforce its noncompetition rights to the letter, and that it works to find solutions that do not require litigation.  If anything, this shows that Amazon does not invoke the authority of the court unnecessarily, and the record establishes that when it does, courts enforce its agreements—as evidenced by the unbroken string of rulings in Amazon's favor over the past six years.

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 5
(2:19-cv-01176-RSM)

Amazon's position is that the Vice President role Moyer was hired to fill—which, among other things, (i) allows Moyer to personally pitch enterprise clients and prospects (***including Amazon's own prospects and customers***), (ii) puts Moyer in charge of developing Google Cloud's sales strategy for a massive, regulated vertical, and (iii) grants Moyer free reign to participate in formulating cloud-wide strategy and product offerings, including with Google service teams—is a breach of his contract and will harm Amazon in innumerable, and in many instances, undetectable ways.  The injunction that is sought will temporarily bar Moyer from filling a specific position at Google, not from "making a living."  Amazon is seeking targeted relief because Vice President, Healthcare is the only position that has been proposed by Google.

###### B.    The Standard for Injunctive Relief is a Red Herring

Moyer argues that this case somehow turns on the application of federal, as opposed to state, procedural rules.  Opp. at 19.  It does not.  Injunctive relief under Washington law requires a showing "that the acts complained of ***have or will*** result in actual and substantial injury." *Rabon v. City of Seattle*, 135 Wn.2d 278, 284 (1998) (emphasis added).  Relief under Federal Rule of Civil Procedure 65 requires the movant "to show: (1) that they are 'likely to succeed on the merits,' (2) that they are 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [their] favor,' and (4) 'an injunction is in the public interest.'" *Belgau v. Inslee*, 2018 WL 3727593, at *1 (W.D. Wash. 2018) (quoting *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018)).  Amazon's motion is brought under the four-part "federal" test quoted above (not the more rigorous state standard), *see* Mot. at 15-16, and the motion includes abundant proof that the harms it will suffer are both "irreparable" and "likely" if Moyer is given free rein to devise Google Cloud's strategy and solicit Amazon's customers and prospects.

###### C.    In the Absence of an Injunction, Moyer <u>Will</u> Violate His Agreement

There is no dispute that Moyer has an enforceable Washington noncompetition agreement that was given in return for generous consideration. Moyer does not contest the

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 6
(2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

geographic scope of the restrictions (given that the cloud has none), or the duration.  While

Moyer and Google appear to concede the agreement legitimately imposes some limits on what

Moyer can do for Google, they have never said what they believe those limits are.  Bugaighis

Decl., Ex. A (Enslin Dep.); at 167; Moyer Dep., 28-29, 99-100 ("not sure" if he can solicit

customers he worked with at Amazon and others in the financial industry).  In the absence of

injunctive relief, Moyer *will* violate his agreement—and both Moyer and Google have candidly

admitted that they will conform to what is ordered by the Court, nothing more.  Moyer Dep.,

100 (deciding whether there are any limits on his work is "why we are here"); Enslin Dep., 167

("no restrictions right now because there's no agreement in place"; will follow order of the

court.  Here, breach—in the absence of an injunction—is not speculative, it is a certainty.

**D.      The Harms to Amazon from a Breach are Irreparable**

The *types of harm* that will be suffered by Amazon if Moyer is allowed to breach his

agreement are *irreparable*, and Moyer cites no authority to the contrary.[24]  Because Moyer will

directly solicit AWS healthcare customers and prospects, and can (and necessarily will) use his

knowledge of AWS's strategies ███████████████████████████

████████████████████████████, Moyer will influence Google's

business—and harm AWS's—in ways that will be extraordinarily difficult to prove and

measure:  "[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.

1991) (citing *Regents of Univ. of Cal. v. Am. Broad. Cos.,* 747 F.2d 511, 519–20 (9th Cir.

1984)); *Abdou v. Davita, Inc.*, 734 F. App'x 506, 507 (9th Cir. 2018) ("[Plaintiff] faces

irreparable harm in the absence of an injunction. [Defendants] do not face comparable harm if

one is entered; they are simply being held to the terms of the noncompetes that they signed

---

[24] Perhaps because of inartful wording in Amazon's opening brief, Moyer devotes a page of legal argument to an argument that the Court cannot "presume irreparable injury."  Opp. at 19.  Notwithstanding cases such as *Ocean Beauty* that would support that argument, Amazon is not arguing that injury is "presumed," but rather that the types of harm caused by breach of a noncompetition agreement are presumptively *irreparable*; *Ferrero* was cited for this point.  Amazon's motion plainly argues why that irreparable harm is likely, if not certain, on the facts of this case. Mot. at 19-23.

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 7
(2:19-cv-01176-RSM)

voluntarily (and for which they were well compensated)."); *Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp.*, 648 F. App'x 709, 711 (9th Cir. 2016) ("Because the harm is intangible and difficult to quantify, it qualifies as irreparable." ); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer"); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm") (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)).

Google has confirmed that before candidates can even *interview* at the company, they must execute a nondisclosure agreement, and Google's Enslin confirmed that *every aspect of Google's cloud business*— ███████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████—is confidential and proprietary, so much so that Google designated most of its production in this case as "outside counsel's eyes only."  *See* Bugaighis Decl., Ex. A (Enslin Dep.) 123-131.  It is impossible for Amazon to penetrate Google's cloak of secrecy in order to prove its losses with precision or to confirm what Moyer is and is not doing in his pitches to Amazon's customers and prospects, in executive strategy sessions, and in his conferences with the technical teams at Google where product development priorities are being established.  The potential harm to Amazon is not easily quantified, and is irreparable as a matter of law.

### E.     Amazon is Likely to Suffer a Loss of Goodwill, Business, and Other Irreparable Harm if Moyer is Allowed to Breach His Agreement

In substance, Moyer's opposition boils down to an argument that while he *could* do serious damage to Amazon's business as a Google Cloud Vice President, Amazon must assume that he won't, and that unless Amazon shows that he *is* harming Amazon by using his knowledge of its customers and its business, it has no recourse in federal court.  This is not the law.  The *risk* of harm is the reason noncompetition agreements exist in the first place:  An

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

employer "needs to demonstrate a protectable interest exists and that [its former employee] could pose a threat to that interest if not adequately restrained . . . . It does not have to prove actual competition or damages . . . . [I]t is the potential to compete—not the actual competition—that makes the noncompete necessary." *Emerick v. Cardiac Study Ctr., Inc.*, 189 Wn. App. 711, 723 (2015).  The Ninth Circuit has echoed these sentiments, stating that actual harm is not required, and that "a covenant not to compete is not satisfied by a mere promise to refrain from soliciting a former employer's customers and disclosing its confidential information," *Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp. Acquisition Co.*, 611 F. App'x 385, 387 (9th Cir. 2015), which is *precisely* the defense gambit in this case.

Moyer was hired by Google *to take business from AWS*, and there is no serious question that his efforts to do so as a former AWS Director will harm Amazon.  Second Clayville Decl., ¶ 10 & Ex. A.  Amazon has demonstrated that if Moyer is given license to solicit AWS's healthcare customer and prospects (as well as its other enterprise customers), formulate Google's cloud strategy to compete with AWS, and help shape its product offerings, Amazon will more likely than not suffer harm that cannot be readily measured.[25]  *Guzy v. Guzy*, 2019 WL 1368614, at *3 (D. Nev. Mar. 26, 2019) ("the word 'likely' means what it normally means, i.e., more probable than not").  Allowing Moyer to personally pitch customers and prospects with a presentation that starts with a statement (such as the one in Moyer's own resume) that he " ███████████████████████████████████████████████ ████████████████████████████," followed by an explanation as to why Google Cloud is the "better choice" for the customer's needs, will in and of itself cause a loss of goodwill. Second Clayville Decl., ¶ 10.  By analogy to the test of proximate cause, the harms to Amazon are those that "in the ordinary course of things, would be likely to result" from Moyer's breaches. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001);

---

[25] Banks Decl., ¶ 18; Second Banks Decl. ¶ 8; Carlton Decl., ¶ 9; Second Carlton Decl. ¶¶ 4-5; Clayville Decl., ¶ 22; Second Clayville Decl. ¶¶ 9-10 & Ex. A; Fallon Decl., ¶¶ 24, 27, 28; Second Fallon Decl. ¶¶ 12-13; Gandarillas Decl., ¶ 9; Second Gandarillas Decl. ¶¶ 7-8; Neault Decl., ¶ 11; Second Neault Decl. ¶ 9.

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 9
(2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, 282 F. App'x 885, 887 (2d Cir. 2008) (solicitation of clients "would likely harm [plaintiff's] good will because it would affect [plaintiff's] general reputation in the market"); *HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) (finding that harm was likely where defendant "received information about [plaintiff's] strategic plans, and the risk of misuse of this information could lead to lost business opportunities and thereby harm [plaintiff]"; "determining whether a threat of disclosure exists . . . [c]ourts are frequently called upon to . . . decide or predict the likely consequences arising from a given set of facts and to grant legal remedies on that basis").

>    ### F.   Moyer is Not Relieved of His Noncompete by Claiming to Have "Forgotten" Everything He Wrote, Read, Downloaded, and Commented On as an Amazon Executive

Tapping into the Google litigation playbook (circa 2012), Moyer argues that his noncompetition agreement should not be enforced because he "does not remember" the details of his work as an Amazon executive, citing *Amazon.com, Inc. v. Powers*, 2012 WL 6726538, at *5 (W.D. Wash. Dec. 27, 2012) and its discussion of a trade secret claim that is not pleaded in this case. Although this rings hollow given Moyer's recall of the details of other helpful events that took place years earlier, Amazon is not required to extract an admission that Moyer "remembers" the materials he read, downloaded, discussed, debated, commented upon, and, in some instances, authored, in order to enforce his agreement; as explained in Amazon's motion, Amazon need only show Moyer had access to and made use of its confidential information as an Amazon employee in order to show a protectable interest. *See* Mot. at 21-22 (citing cases).[26] Proof of "memorization"—which would effectively render noncompetes

---

[26] Moyer's only attempt to distinguish these authorities is that the opinions discuss "the solicitation of past customers." *See* Opp. at 16. The opinions were not limited to discussions of customer lists, but rather encompassed former employees' access to "the intimate details of [a] former employer's business," "valuable information as to the nature and the character of the business," and "trade secrets and confidential information." *U.S. Water Servs., Inc. v. Itoh*, 2011 WL 834167, at *2 (W.D. Wash. Mar. 3, 2011); *Nw. Mobile Servs., LLC v. Schryver Med. Sales & Mktg., Inc.*, 2006 WL 1799620, at *2 (W.D. Wash. June 28, 2006); *Emerick*, 189 Wn. App. at 722. Moreover, Moyer fails to explain how the discussion of customer solicitation nullifies the holding of these cases—namely, that employers need only show that a former employee had access to and used confidential information in his job in order to enforce its noncompete agreement, proof that is in not in dispute.

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 10
(2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

unenforceable—is not and has never been required to secure relief under a valid Washington agreement.  Despite Moyer's success in ████████████████████████████████████████,[27] here there is no dispute whatsoever that Moyer studied, commented upon and debated important, confidential AWS strategies and product development plans that run through 2020, and that this wealth of knowledge is imputed to an individual who admits he aspired to climb the corporate ladder.  Bugaighis Decl., Ex. B (Moyer Dep.), at 222.

## IV.    CONCLUSION

In the absence of an injunction, Phil Moyer will violate his noncompetition agreement, and Amazon will suffer irreparable harm.  Without knowing what Moyer actually did at Amazon, Google hired Moyer with full awareness that he had a noncompetition agreement; Moyer ████████████████████ if he is required to honor his promises to Amazon, and will be ██████████████ along the way.  The equities tip heavily in favor of protecting Amazon's legitimate interests under an agreement that is compliant with Washington law, and Amazon renews its request that Moyer be enjoined from serving as the Vice President, Healthcare, Google Cloud, until a final decision on the merits or November 22, 2020.

DATED this 6th day of September, 2019.

Davis Wright Tremaine LLP
Attorneys for Plaintiff Amazon.com, Inc.

By *s/ Brad Fisher*
Brad Fisher, WSBA #19895
Zana Bugaighis, WSBA #43614
Jordan Clark, WSBA # 49659

---

[27] Because Moyer wiped his laptop, Amazon was forced to consult a forensic expert and cobble together proof from the mailboxes of others; valuable data was lost as a result.  Moyer knew what he was doing, and has been unable to sustain a coherent explanation for his actions.  At deposition, Moyer originally stated he panicked and wiped the computer in response to an "ominous" request that he return it immediately. When it was shown that he was actually deleting damning evidence well before he gave notice to Amazon, he concocted a new story that he knew forensics were required, but that "everyone" deletes the contents of their computer without complaint from Amazon.

REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION - 11
(2:19-cv-01176-RSM)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure

Dated this 6th day of September, 2019.


*s/ Brad Fisher*
Brad Fisher, WSBA #19895

CERTIFICATE OF SERVICE – 1
(2:19-cv-01176-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax